IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

LORETTA MITCHELL,                )
                                 )
     Plaintiff,                  )
                                 )
          v.                     )
                                 )    1:09cv1052 (JCC)
RAPPAHANNOCK REGIONAL JAIL        )
AUTHORITY, et. al.,              )
                                 )
     Defendants.                 )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on a Motion to Dismiss
Count II (Violation of the Eight Amendment) and Count IV (Gross
Negligence) jointly filed by Defendants Rappahannock Regional
Jail Authority (which has since withdrawn its Motion; *see* Dkt.
41), Scott Baird, Corporal Barbozza, Vincent Collier, Sharon
Cronin, Gregory McRea, Challoughlicz Randle, Victor Reid,
Deborah Shepard, Claude Sivels, Suzanne Weatherhead, Diane
Wilson (the corrected name of individual identified in *the*
Amended Complaint as "Sgt. Willis/Wilson;" *see* Dkt. 35), Dwight
Wilson, and Brian Yezierski (collectively "Joint
Defendants")(Dkt. 37) and a substantially similar Motion to
Dismiss filed independently by Defendant Patricia Dallos

("Dallos")(Dkt. 39) (collectively "Defendants").[1]  On October 30,
2009, Plaintiff Loretta Mitchell ("Mitchell" or "Plaintiff")
filed the Amended Complaint in the instant action alleging the
following causes of action: (1) "Violation of the Eighth
Amendment" against the Rappahannock Jail Authority; (2)
"Violation of the Eighth Amendment" against all individual
defendants; (3) Assault and Battery: *Respondeat Superior* Claim
against Defendant Rappahannock Jail Authority; (4) Gross
Negligence against all defendants; and (5) Negligent Retention
against Defendant Rappahannock Jail Authority.  Plaintiff
requests actual and punitive damages both jointly and severally
against all defendants, costs including attorney's fees,
injunctive relief "securing her well being and security from
reprisal should she be returned to the Rappahannock Regional
Jail", and all other just relief.  For the following reasons,
the Court will deny Defendants Motions to Dismiss Counts II and
IV.

## I. Background

The factual allegations relevant to these Motions to
Dismiss are as follows.  Plaintiff Mitchell is an adult resident
of Stafford County, Virginia currently in the custody of the
Virginia Department of Corrections.  (Amend. Compl. ¶ 1.)  On or

---

[1] Defendants Kevin Boswell, Christopher Candler, Sgt. V. Dixon, Phillip
Grimes, Lorrie Rohme, Houston Norris, and David Theisen have not joined in
these Motions to Dismiss.

about August 30, 2007, Plaintiff entered the custody of the
Department of Corrections and was sent to the Rappahannock
Regional Jail ("Jail") where she was to serve her sentence of a
mandatory minimum of three years plus ninety days imprisonment.
(Amend. Compl. ¶ 27.)  The jail houses approximately 1,000
inmates and employs approximately 150 correctional officers.
(Amend. Compl. ¶ 3.)  It was Plaintiff's intent to accrue good-
time credit by working at the jail and obeying its rules in
order to shorten her sentence.  (Amend. Compl. ¶ 37.)  Shortly
following her arrival at "Jail," Mitchell came into contact with
non-defendant Richard Zacofsky ("Zacofsky"), a resident of
Fredricksburg, Virginia who was working as a correctional
officer in the employ of the Jail Authority and initially
assigned to the female housing unit where Mitchell was housed.
(Amend. Compl. ¶ 28.)  The bulk of Plaintiff's Amended Complaint
asserts allegations relating to the alleged series of sexual
abuses she suffered at the hands of Officer Zacofsky and the
defendants alleged "deliberate indifference" to the same.[2]

    At all relevant times, defendants Vincent Collier,
Sharon Cronin and Victor Reid were working at the jail holding
the rank of colonel and each was the immediate superior of

---

[2] The Court attempts to summarize these allegations below, however, in making
its determination regarding these motions the Court considered all of the
relevant allegations.  Allegations against specific defendants that are not
cited in the Background are referenced in the Court's discussion of those
individual allegations in Section III.A.2.

correctional Officer Zacofsky.  (Amend. Comp. ¶ 5.)  At all
relevant times, defendants Willis/Wilson, (now known to be Lt.
Diane Wilson), Patricia Dallos, Robert Wilson, Dwight Wilson,
Suzanne Weatherhead and Challoughliczilcz Randle were working at
the jail holding the rank of lieutenant; defendant Scott Baird
was working at the jail holding the rank of captain; defendants
Deborah Shepard, Gregory McRea, Claude Sivels were working at
the jail holding the rank of sergeant; and defendants Corporal.
Barbozza, Brian Yezierski and Kevin Boswell were working at the
jail holding the rank of corporal.  (Amend. Compl. ¶ 8.)  At all
relevant times, these defendants were all higher ranking
correctional officers than Officer Zacofsky.  (Amend. Compl.
¶ 8.)

        The Amended Complaint characterizes all defendants,
with the exception of defendant Rappahannock Regional Jail
Authority, as the "individual defendants."  (Amend. Compl. at
¶ 44 n. 5.)  For purposes of this Memorandum Opinion, this Court
will use the term "Defendants" to mean only these defendants who
have maintained the Motions to dismiss that are presently the
before Court (*i.e.* the Joint Defendants and Patricia Dallos).

        Plaintiff's voluminous Amended Complaint contains one
hundred and forty-one paragraphs of detailed factual allegations
of widely-known and widespread illegal sexual activity between
male guards and female prisoners as well the sexual harassment

of the prisoners by the guards.  (See Amend. Compl. ¶¶ 1, 9-25.)[3]

Plaintiff alleges that while it was illegal under Va. Code

§ 18.2-64.2 for a guard to have "carnal knowledge of an inmate"

there was a pervasive double standard in the "sexual culture" of

the Jail allowing male guards to have forced/abusive or

"consensual" sexual relationships with female prisoners, while,

sexual activity between male prisoners an correctional personal

was forbidden.  (Amend. Compl. ¶¶ 9-18.)  As evidence of the

pervasiveness of, and acquiescence to, the sexual dealings

between male personnel and female inmates Plaintiff offers a

number of specific allegations detailing; statements made by

guards discussing their sexual abuse or sexual relationships

with female prisoners; she alleges that an "Officer Chris J."

forcibly kissed her against her will and passed her "love notes"

(See Amend. Compl. Ex. B.); a guard displaying nude photographs

of himself to a female inmate (Amend. Compl. ¶ 20(b)),

statements made by a number of female inmates regarding their

sexual activities with various non-defendant, male prison

personnel.  (Amend. Compl. ¶ 20(a)-(f).)  Primarily, however,

Plaintiff's allegations relate to the repeated sexual abuse

suffered at the hands of Zackofsky.

Plaintiff alleges that Zacofsky's "obsession" with her

as well as his willingness to break institutional rules in order

---

[3] The Amended Complaint also contains a several conclusory allegations which
this Court does not consider.

to gain access to her was widely known to "each of the individual defendants" (*see* Amend. Compl. ¶¶ 25, 31, 47-50, 52). The Defendants, as well as numerous other corrections officers "made light to Ms. Mitchell of Officer Zacofsky 'having a crush' on her." (Amend. Compl. ¶ 22.)

Plaintiff alleges that Zacofsky's conduct began immediately after her arrival at the Jail and included physically complimentary or sexual comments and staring (see Amend. Compl. ¶¶ 30, 43, 47-51) and, on one alleged occasion on September 20, 2007, forcible kissing and fondling. (Amend. Compl. ¶ 34.) Plaintiff alleges that this conduct was "common knowledge" amongst inmates and correctional personnel including Defendants. (See Amend. Compl. ¶ 31, 33, 38, 40.) Following Zacofsky's September 20 assault, Plaintiff allegedly filed an inmate request form, (the mandatory first step in initiating a grievance) and asked to speak with Lt. Diane Wilson. (Amend. Compl. ¶ 35.) Lt. Wilson said she would "get back to [her]." (Amend. Compl. ¶ 36.) By October, 2007, other female inmates had lodged oral and written complaints regarding Zacofsky's behavior toward Plaintiff with Lt. Wilson as well as non-movant defendant Norris. (Amend. Compl. ¶ 38.) Plaintiff alleges that all of the defendants were aware of some or all of these inmate complaints and that as a result of these complaints Zacofsky was

transferred from Mitchell's wing to the jail's medical unit.
(Amend. Compl. ¶¶ 39-41.)[4]

Despite Zacofsky's transfer, Plaintiff alleges that
his conduct got worse. Zacofsky had access to Mitchell as she
worked in the food preparation area adjacent to the Officer's
Lounge. (Amend. Compl. ¶ 47.) Plaintiff alleges that it was a
violation of Jail policy for Correctional Officers to be behind
the food preparation counter. (Amend. Compl. ¶ 47.)
Nevertheless, Plaintiff alleges that "all defendants" saw
Zacofsky go behind the counter to stare at Plaintiff or try to
engage her in conversation. (Amend. Compl. ¶¶ 49-50.)
Defendant Barbozza was allegedly asked by Plaintiff to stop
Zacofsky's conduct and he told her not to be rude to Zacofsky or
she would be fired from her kitchen job, thereby imperiling her
ability to accrue "good time" and to shorten her sentence.
(Amend. Compl. ¶¶ 37, 48.)

In October of 2007, Zacofsky's conduct allegedly
escalated. Mitchell worked in the Officer's Lounge where
Zacofsky gave her a "direct order" to go into the storage room
to retrieve a soda for him. (Amend. Compl. ¶ 56.) It is an
internal Jail offense for a prisoner to refuse such an order.
(Amend. Compl. ¶ 56.) Zacofsky followed Mitchell "into the

---

[4] While stationed in the medical unit Zacofsky entered Plaintiff's examination
room and reviewed her medical chart and was ultimately asked to leave by the
attending nurse who stated "Didn't they move you out of the women's unit
because you were hovering over this lady?" (Amend. Compl. ¶ 43.)

7

storage room and there forced her, against her will, to perform oral sex upon him." (Amend. Compl. ¶ 57.) Zacofsky then warned her not to alert his superiors and threatened to Mitchell's family if she told anyone what he had done.[5] (Amend. Compl. ¶ 57.) At the time of this assault non-movant defendants Grimes, Rohme, and Norris, and internal investigator Kevin Hudson were in the Officer's Lounge. Plaintiff alleges that; (1) each heard Zackofsky direct her to get more Dr. Pepper although there was some visibly available in the vending machine in the room; (2) each saw him follow her into the storage room and not come out for far longer than it would take to get a bottle of soda; and, (3) no one did anything to come to her aid (Amend. Compl. ¶ 61.) Plaintiff further alleges that she was afraid to directly report the incident so instead filed another inmate request form asking to speak with Lt. Wilson: Wilson again said she would "get back to her." (Amend. Compl. ¶¶ 58-59.)[6]

Plaintiff alleges that on November 18 and 27, December 3 and 14, 2007, and January 5, 7, 18, and 24, 2008, Zackofsky repeated his assaults on Plaintiff. (Amend. Compl. ¶¶ 62-72.) Critically, Plaintiff alleges that over the course of these

---

[5] Plaintiff alleges that Zacofsky said he had researched her family, including her husband and daughter: he knew the details of her residence, her vehicles, her husband's work schedule, that she had a daughter and that she had "nice dogs" in her backyard. (Amend. Compl. ¶ 57.)

[6] Plaintiff further alleges that she was afraid to file an impermissible second request because she felt the Jail tolerated sexual relations between guards and prisoners and she was advised that the Jail would "turn it around on [her]" and portray her as the blameworthy party for the sexual contact. (Amend Compl. ¶ 60.)

eight additional assaults "*each* of the defendants witnessed *at least several*" of these incidents. (Amend. Compl. ¶ 73 )(emphasis added.) Plaintiff does not attempt to identify which individual defendants were witnesses to each specific assault but offers short and plain statements that Defendants were all individually aware of Zacofsky's obsession with Mitchell, all witnessed him follow her into the storage room for lengthy periods of time, yet did nothing to intervene. (Amend. Compl. ¶¶ 62-73.)

Additionally, Plaintiff alleges that on December 22, 2007, in the midst of these assaults, Zacofsky forcibly dragged Plaintiff into the storage room and raped her. (Amend. Compl. ¶ 68.) He once again threatened to harm her family. Mitchell once again feared detailing the assault in writing and filed an inmate request form to speak with Lt. Wilson, and Wilson once again said that "she would get back to [her.]" (Amend. Compl. ¶ 69.) Mitchell alleges that even though on January 22, 2008 and February 5, 2008 the fact that Zacofsky was "messing around" with Mitchell was reported to defendants Dallos and Wilson, the defendants did nothing to inquire or protect Plaintiff. (Amend. Compl. ¶¶ 74-75.)

On February 6, 2008, Mitchell had a court appearance. (Amend. Compl. ¶ 78.) Prior to her transport to court non-movant Defendant Sgt. Dixon was in front of Mitchell's

holding cell discussing with other officers about how they were "going to keep Zacofsky in control today." (Amend. Compl. ¶ 78.) The inmates were taken to court together; however, Plaintiff alleges that in a departure from standard procedure, Mitchell was left to await transportation back to the Jail without the other prisoners. (Amend. Compl. ¶ 79.) Plaintiff alleges that Dixon permitted Zacofsky to pick Mitchell up in the holding cell at Stafford County Circuit Court, in contravention of procedure, and transport her back to the Jail on his own. (Amend. Compl. ¶ 81.) During the trip, Zacofsky said he had been questioned by non-movant defendant Norris, that he told her he knew she had "been running [her] mouth" and that if she didn't "shut [her] mouth" she would "be looking over [her] shoulder for the rest of [her] life." (Amend. Compl. ¶ 81.) After radioing the Jail to allow the vehicle to enter the facility, Zacofsky parked the van and entered the holding area of the vehicle and forced Plaintiff to perform oral sex on him. (Amend. Compl. ¶¶ 83-85.) Plaintiff alleges that despite prison officials', including non-movant defendant Dixon, knowledge of Zacofsky's record of behavior, that the van had returned to the prison, and the fact that Plaintiff and Zacofsky remained in the van for a lengthy period of time, no Jail staff then present Zacofsky's assault. (Amend. Compl. ¶ 85.) Plaintiff alleges that upon exiting the van, Mitchell's blouse

was stained with Zacofsky's semen. (Amend. Compl. ¶ 86.) Dixon made Plaintiff strip off her shirt in front of Zacofsky, change into a prison-issue shirt, and then allowed Zacofsky to escort Mitchell back to her cell, where Zacofsky once again warned her to be silent or she would be "look[ing] over [her] shoulder" for the rest of her life. (Amend. Compl. ¶¶ 85-87.)

Plaintiff alleges that she took several actions in an attempt to "self-help;" however, when she attempted to ask her husband to contact a local reporter through a Jail call with her husband the substance of her conversation was re-laid to Zacoksky. Zacofsky was able to recount to Mitchell the details of her telephone conversation and once again threatened Plaintiff. (Amend. Compl. ¶¶ 88-90.) Plaintiff alleges that she then became desperate and planned to attempt to "scald Officer Zacofsky" when she saw him in the kitchen area. (Amend. Compl. ¶¶ 93-95.) An inmate reported Mitchell's plan to Lt. Wilson who informed Norris who then ordered Mitchell not to report to work until Norris had the "opportunity to speak to her." (Amend. Compl. ¶¶ 95-97.)

On February 20, 2008, Mitchell was scheduled to be taken to court. Plaintiff alleges that Zacofsky came to the holding cell and threatened her again within the hearing of nonmovant defendant Norris and other officers, however, when she requested that they get Zacofsky away from her they did nothing.

(Amend. Compl. ¶ 100.)  That day, Plaintiff went directly to Lt. Wilson and stated that she had been the victim of "ongoing sexual abuse" by Zacofsky and that she demanded to speak to Norris.  (Amend. Compl. ¶ 101.)  The next day, February 21, 2008 Plaintiff met with Norris and Officer Hudson who informed her that "everyone knows about you and Zacofsky," that they knew about numerous other sexual activity between male guards and female prisoners.  (Amend. Compl. ¶¶ 102-103.)  Within hours of this meeting, Plaintiff was told to gather her belongings and was taken by defendant Shepard to the hall in front of the offices of non-movant defendants Rohme and Dixon.  Rhome and Dixon proceeded to confiscate "all [Mitchell's] copies of the inmate request forms which she had submitted . . . her log of the goings-on at the jail, [and] her address book. . . ."[7] (Amend. Compl. ¶ 105.)

Plaintiff was removed from the Jail and driven to Northern Neck Regional Jail by Rohme and Dixon during which time Plaintiff alleges that non-movant Dixon made a number admissions about her treatment.  (Amend. Compl. ¶ 110.)  During her subsequent incarceration an investigation was launched into Officer Zacofsky who ultimately pled guilty to the crime of "carnal knowledge of an inmate," Va. Code § 18.2-64.2 and

---

[7] Plaintiff alleges these documents have never been returned and this has hindered her ability to successfully advance her claims. (Amend. Compl. ¶¶ 106-108.)

received a suspended sentence.  (Amend. Compl. ¶¶ 118-134.)

Plaintiff makes a number of allegations, stating that during the

investigation, defendants attempted to minimize the publicity

and damage to the Jail by covering up the incidents.  (Amend.

Compl. ¶¶ 118-134.)  These include the Jail's failure to notify

Plaintiff of rights under the Virginia Crime Victim and Witness

Rights Act, Va. Code § 19.2-11.01(C); taking administrative

rather than criminal action against other guards found to have

sexually misbehaved with other female inmates' (Amend. Compl. ¶

126); the confiscation of other inmates personal notes and

records of complaints regarding sexual misbehavior in the Jail

(Amend. Compl. ¶ 127); and, while, refusing to give Plaintiff a

STD test, demanded that Plaintiff provide a urine sample for a

pregnancy test.  (Amend. Compl. ¶ 132.)

On January 8, 2010 both Joint Defendants and Defendant

Dallos moved to dismiss under Federal Rule of Civil Procedure

12(b)(6) and asserted "qualified immunity."  (Dkts. __ and __.)

Plaintiff opposed on January 29, 2010 (Dkt. 53) and Defendants

replied on February 3, 2010.  (Dkt. 54).  This Court heard

argument on this motion on February 4, 2010.  These motions are

now before the Court.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal

sufficiency of a complaint.  *See Randall v. United States*, 30

F.3d 518, 522 (4th Cir. 1994) (citation omitted). In deciding a
Rule 12(b)(6) motion to dismiss, the Court is first mindful of
the liberal pleading standards under Rule 8, which require only
"a short and plain statement of the claim showing that the
pleader is entitled to relief." Fed. R. Civ. P. 8. Thus, the
Court takes "the material allegations of the complaint" as
admitted and liberally construe the Complaint in favor of
Plaintiffs. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)
(citation omitted).

While Rule 8 does not require "detailed factual
allegations," a plaintiff must still provide "more than labels
and conclusions" as "a formulaic recitation of the elements of a
cause of action will not do." *Bell Atlantic Corp. v. Twombly*,
127 S. Ct. 1955, 1964-65 (2007) (citation omitted). The Court
will also decline to consider "unwarranted inferences,
unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd.
v. Consumeraffairs.com, Inc*. 2009 WL 5126224, 3 (4th Cir. 2009)
(citing *Wahi v. Charleston Area Med. Ctr., Inc.,* 562 F.3d 599,
615 n. 26 (4th Cir. 2009); *see also Ashcroft v. Iqbal,* 129 S.Ct.
1937, 1951-52 (2009). Indeed, the legal framework of the
Complaint must be supported by factual allegations that "raise a
right to relief above the speculative level." *Id*. at 1965.

In its recent decision, *Ashcroft v. Iqbal*, the Supreme
Court expanded upon *Twombly* by articulating the two-pronged

14

analytical approach to be followed in any Rule 12(b)(6) test. *Iqbal*, 129 S.Ct 1937 (2009). First, a court must identify and reject legal conclusions unsupported by factual allegations because they are not entitled to the presumption of truth. *Id.* at 1951. "[B]are assertions" that amount to nothing more than a "formulaic recitation of the elements" do not suffice. *Id.* (citations omitted). Second, assuming the veracity of "well-pleaded factual allegations", a court must conduct a "context-specific" analysis drawing on "its judicial experience and common sense" and determine whether the factual allegations "plausibly suggest an entitlement to relief." *Id.* at 1950-51. Satisfying this "context-specific" test does not require "detailed factual allegations." *Nemet Chevrolet, Ltd.*, at *4 (citing *Iqbal* at 1949-50 (quotations omitted)). The complaint must, however, plead sufficient facts to allow a court to infer "more than the mere possibility of misconduct." *Id.*

## III. Analysis

The Defendants make three arguments in support of their motions to dismiss. First, Defendants argue that Plaintiff has not alleged facts sufficient under *Iqbal* to properly state a claim against defendants for supervisory liability under § 1983. Second, Defendants argue that they are entitled to qualified immunity. Third, they argue that Plaintiff has not alleged facts sufficient under *Iqbal* to

15

properly state a claim against defendants for Gross Negligence under Virginia Law.

## A. Supervisory Liability under § 1983

The parties here do not dispute the standard for supervisory liability under 42 U.S.C. § 1983 in the Fourth Circuit. (Joint Defendants' Mem. in Supp. of their Mot. to Dis. ("Joint Mem.") at 7-8; Dallos Mem. at 5; Pl.'s Opp. to Mot. to Dis. at 8.) There are three elements necessary to establish supervisory liability under § 1983:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
>
> (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"[8]; and
>
> (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). In order to overcome a Motion to Dismiss, Plaintiff must have alleged facts sufficient to plausibly suggest an entitlement for relief under this standard. Defendants argue that Plaintiff has not met this burden.

---

[8] The question of "whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence."[8] *Farmer v. Brennan,* 511 U.S. 825, 842 (1994). To prove a case of "deliberate indifference" "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id., 511* U.S. at 842.

## 1.  Allegations Against "All Defendants"

Specifically, Defendants contend that the general allegations made by Plaintiff regarding "individual defendants" constitute the type of "threadbare" allegations that *Iqbal* and *Twombly* have specifically found insufficient.  (Joint Mem. at 9; Dallos' Mem. at 6.)  Paragraphs 13, 17, 20, 22-23, 25, 30-31, 40, 44-45, 47, 49-50, 52-55, 62, 64, 66, 70, 73, 80, 93-94, 98, 106, 108, 116, 120, 125-128, 130, 134, 137-138, 145, and 147 all make reference to "defendants," "each defendant" or "all defendants."  For Defendants Baird, Collier, Cronin, Randle, Reid, Yezierski, McRea, Shepard, and Dwight Wilson, there are no other factual allegations regarding their conduct, only allegations sufficient to identify them and their responsibilities at the Jail.  Defendants argue that such references are merely "conclusory allegations" submitted in lieu of specific allegations regarding each of the Defendants and do not meet the requirements of *Iqbal*.  (Joint Mem. at 9.)[9] Defendants then go on to expand this argument for specific groups of individual defendants.  The Court will briefly address these arguments in Sections III.A.2 below.

---

[9] Defendant Dallos's Motion contains similar arguments, *e.g.* "The remaining allegations that she knew or should have known that Officer Zacofsky was committing sexual assaults against Plaintiff are conclusory in nature and are without factual support.  There are no specific allegations that [Dallos] had any direct involvement with Plaintiff or Officer Zacofsky."

Plaintiff responds to Defendants' argument on two fronts. First, Plaintiff argues that *Nehmet* and *Iqbal* have reiterated that a court must conduct a "context-specific" analysis of the Complaint. (Opp. at 6 (citing *Iqbal*, at 1949-50); *see Nehmet,* at *4.*) Plaintiff points to several specific factual allegations which she argues provide the "context" for the Court's inquiry: a guard passing a lewd note to Plaintiff (Amend. Compl. ¶ 20, Exhibit B); Zacofsky forcibly kissing another inmate and that inmate's complaints resulting in threats from other Correctional Officers (Amend. Compl. 24); and, a guard displaying nude photographs of himself to a female inmate (Amend. Compl. ¶ 20(b).) Plaintiff contends that these allegations constitute "specific factual averments addressing the open and notorious sexual activity between male guards and female inmates." (Opp. at 6.) The Court examines the allegations against all Defendants within the appropriate context.

Second, and more significantly, Plaintiff argues that the factual allegations leveled against "all defendants" are specifically targeted at every named defendant and leveled against the group as "[defendants] are sued for having been deliberately indifferent in identical ways (*i.e.*, inaction)." (Opp. at 8.) In essence, the use of "all defendants" was simply a drafting expedient so that they wouldn't have to name each and

every defendant repeatedly.  Plaintiff argues that there is no
requirement that a Plaintiff who was harmed on multiple
occasions by multiple defendants acting together must identify
which defendants performed which specific acts on which specific
date and time.   (Opp. at 8.)  In support of this argument,
Plaintiff cites to another prisoner sexual abuse case, *Billman*
*v. Ind. Dep't of Corrections*, 56 F.3d 785 (7th Cir. 1995).  In
*Billman* the plaintiff was unable to identify the specific
individual who had harmed him prior to the beginning of
discovery.  The Seventh Circuit held:

> We do not think that the children's game of pin the
> tail on the donkey is a proper model for
> constitutional tort law. If a prisoner makes
> allegations that if true indicate a significant
> likelihood that someone employed by the prison system
> has inflicted cruel and unusual punishment on him, and
> if the circumstances are such as to make it infeasible
> for the prisoner to identify that someone before
> filing his complaint, his suit should not be dismissed
> as frivolous.

*Id.* at 789.  While the situation is not directly analogous, the
plaintiff/prisoner here was able to make much more detailed
allegations against all of the Defendants then Billman was.  She
initially identified each individual by name and then
subsequently alleged that (1) "all" of them were allegedly aware
of the pervasive and unreasonable risk Zacofsky posed; (2) "all"
of them on "several" occasions acted with deliberate
indifference when Zacofsky directed Plaintiff into the storage

room or during the time Zacofsky was allowed to remain in the
employ of the prison or in contact with Plaintiff; and, (3) as a
direct result, Plaintiff was injured.

The *Iqbal* case upon which Defendants rely was itself a
supervisory liability case brought against, among others, the
Attorney General of the United States and the Director of the
Federal Bureau of Investigation by a Pakistani plaintiff who was
arrested on criminal charges in the wake of the September 11,
2001 attacks.  In *Iqbal,* the Supreme Court held that the
allegations against these high ranking officials stating that
they were either the "architect" of a unconstitutional policy of
detention or "instrumental" in its enforcement were simply
conclusory allegations and not appropriately assumed to be true.
*Id.* at 1951.  *Iqbal* was a *Bivens* action and that "the state of
mind required to make out a supervisory claim under the Eight
Amendment – i.e., deliberate indifference – requires less than
the discriminatory purpose or intent that Iqbal was required to
allege in his suit against Ashcrot and Mueller."  *Chao v.
Ballista,* 20098 WL 1910954 at *5 n.2 (citing 403 U.S. 388
(1971).  Nevertheless, the standard articulated in *Iqbal*
controls the inquiry here.

Here the allegations are much more specific with a
clear causal link as the harm is tied directly to the inaction
of the Defendants.  Plaintiff has alleged over ten instances of

sexual assaults under circumstances where various Defendants were in a position to have knowledge of what was happening at various times. The Amended Complaint is limited to supervisory personnel who she can specifically identify, based on pleaded facts, as having personally taken the actions (including inaction) and having exhibited the deliberate indifference complained of in this suit. Specifically, Plaintiff has averred that each of the named defendants witnessed or participated in several of these actions. Plaintiff has alleged that *all* individual defendants had direct knowledge of Zacofsky's personal remarks to her (Amend. Compl. ¶ 30); that Zacofsky's obsession was a matter of commentary "among *all* correctional staff, including all defendants." (Amend. Compl. ¶ 31); that *all* defendants saw Zacofsky approach Plaintiff in the kitchen area in violation of the Jail rules on several occasions (Amend. Compl. ¶ 49); and, crucially, that *each* of the defendants witnessed several of the incidents where Zacofsky followed Plaintiff into the storage room and assaulted her (Amend. Compl. ¶ 49); and that none of the defendants ever did anything to assist Mitchell (Amend. Compl. 53) and in fact "made light to Ms. Mitchell of Officer Zacofsky's 'having a crush' on her." (Amend. Compl. ¶ 22.) Plaintiff's failure to write out each defendants name in every time "all defendants" are mentioned in her allegations is not fatal to her claim.

Plaintiff's allegations go well beyond "bare assertions" that amount to nothing more than a "formulaic recitation of the elements." *Iqbal* at 1951 (citations omitted). While, in the Fourth Circuit this "context-specific" test does not require "detailed factual allegations," Plaintiff provides such allegations sufficient to allow this Court to infer "more than the mere possibility of misconduct." *Id*. Plaintiff's factual allegations leveled against "all defendants" sufficiently state a claim of supervisory liability for Eighth Amendment violations against all moving Defendants. *See Nemet Chevrolet, Ltd.*, at *4. Though Plaintiff has sufficiently stated a claim against Defendants on these allegations alone, the Court will nevertheless address each of the defendant-specific arguments in turn.

2.   Individually Named Defendants

Joint Defendants and Defendant Dallos offer a number of individual arguments as to why the additional allegations leveled against specific defendants, in addition to the "all Defendants" allegations discussed above, were insufficient to state a plausible claim for relief.  The Court addresses them in turn.

i.   *Lt. Diane Wilson (aka "Willis/Wilson")*

There are numerous additional specific factual allegations regarding the conduct of Lt. Wilson.[10] Plaintiff alleges that on a number of occasions and specifically after Zacofsky's sexual assaults she filed an "inmate request form" to speak with Lt. Wilson; that these requests forms were a mandatory first step in the formal grievance process and that Lt. Wilson never responded to any of her requests. Defendants argue that as the allegations do not say that Mitchell ever told Wilson about the assaults thus she has failed to state a plausible claim. This argument rings hollow. Lt. Wilson was in a position to inquire into the nature of Plaintiff's inmate requests. Under the circumstances where there are allegedly numerous rumors, comments, common knowledge regarding Zacofsky's actions towards Plaintiff, and Lt. Wilson allegedly "[saw] Officer Zacofsky's harassment of [Plaintiff]" (Amend. Compl. ¶ 72), her alleged failure to contact Plaintiff even once regarding her "inmate requests" is obviously sufficient to state a claim for supervisory liability.

### ii.  *Sue Weatherhead*

In addition to the "all defendants" allegations, Plaintiff has alleged that Lt. Weatherhead witnessed Zacofsky enter Plaintiff's exam room while she was in the hospital ward, read her medical chart and stare at her but allowed him to

---

[10] *See* Amended Complaint ¶¶ 25-26, 58, 63, 65, 67, 69, 71-72, and 135.

remain there. (Amend. Compl. ¶ 43.) As Plaintiff acknowledges, while "standing alone this incident merely shows indifference," however, in the context of the "all defendants" allegations and the rumors and commentary regarding Zacofsky the allegations are sufficient to state a plausible claim.

### iii. *Corporal Francisco Barboza*

The additional allegations against Officer Barboza are that he witnessed Zacofsky, in violation of regulations, approach Plaintiff several times while she was working in the kitchen. (Amend. Compl. ¶ 48.) Mitchell asked Barboza, who was in charge of inmate workers, to prevent Zacofsky from moving behind the counter and approach Mitchell. (Amend. Compl. ¶ 48.) Barboza responded by telling Mitchell not to be rude to Zacofsky or she would be fired. (Amend. Compl. ¶ 49.) In light of the "all defendants" allegations, the allegations against Barboza demonstrate precisely the kind of indifference that establishes a plausible claim for supervisor liability.

### iv. *Claude Sivels*

In addition to the "all defendants" allegations, Siveles is alleged to have heard allegations from another female inmate regarding Zacofsky's sexual assault upon Mitchell and responded by telling her "if you report this no one will believe you." (Amend. Compl. ¶ 19.) This additional allegation demonstrates, constant with "all defendants" allegations, that

*Sivels* was well aware of the threat that Zacofsky posed to
female inmates.

### v.  *Gregory McRea*

Paragraph 51 of the Amended Complaint alleges that
"Sgt. McRay" [sic] joked with Zacfosky that "everyone knows
about you and [Plaintiff Mitchell]." (Amend. Compl. ¶ 51.) The
Amended Complaint further alleges that McRea witnessed Zacofsky
arrive at the Officer's Lounge where Mitchell worked two hours
before his shift and stare at Mitchell. This combined with the
"all defendants" allegations discussed in this section give rise
to a plausible claim of liability.

### vi.  *Dwight Wilson and Dallos*

Defendant Dallos filed her own Motion to Dismiss
arguing, in a similar manner to Joint Defendants, that the "all
defendants" allegations are conclusory in nature and cannot
state a plausible claim for relief against her. Paragraphs
seventy-four and seventy-five of the Amended Complaint add
additional allegations that Dwight and Dallos received two
formal reports, one oral and one written incident report, from
another correction officer that Zacofsky had been "messing
around" with Mitchell. (Amend. Compl. ¶¶ 74-75.) These reports
occurred on January 22, 2008 and February 5, 2008 and the
officers were alleged to have done nothing in response. (Amend.
Compl. ¶¶ 74-75.) Again in conjunction with the "all

defendants" allegations, Plaintiff states a plausible claim of
supervisor liability based on the knowledge and inaction of
these two officers particularly as Plaintiff was sexually
assaulted again on February 5, 2008 after the first report
allegedly reached these Defendants.

### B.   Qualified Immunity

The Defendants all assert the defense of "qualified
immunity."  Qualified immunity is "an entitlement not to stand
trial or face other burdens of litigation." *Mitchell v.
Forsythe*, 472 U.S. 511, 526 (1985).  To defeat an assertion of
qualified immunity Plaintiff must show that the facts alleged,
"taken in the light most favorable to the party asserting
injury," show that the defendants' "conduct violated a
Constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201
(2001.)  If Plaintiff can not sufficiently allege that a
constitutional right was violated the inquiry ends; however, if
the court determines a constitutional right was violated, here
the Eighth Amendment, it then must "ask whether the right was
clearly established." *Id.*  For a right to be clearly
established, it must "be clear to a reasonable officer that his
conduct was unlawful in the situation he confronted." *Id*. at
202.

Defendants' argument for Qualified Immunity is
premised on their argument under Rule 12(b)(6): that Plaintiff

had failed to establish that a Constitutional Right has been violated as she has failed to allege supervisory liability against defendants under the *Shaw v. Stroud* test discussed in Sections III.A.1-2 above. (Joint Mem. 8; Dallos Mem. 7.) As the Court has concluded that Plaintiff has successfully alleged violations of clearly established Eighth Amendment rights through supervisory liability for the acts committed, the Defendants are not entitled to Qualified Immunity on the facts alleged.

### C. Gross Negligence

Plaintiff also alleges a state tort of Gross Negligence against all defendants. Under Virginia Law gross negligence "is a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person. This requires a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness." *Cowan v. Hospice Support Care, Inc.*, 268 Va. 482, 487, (Va. 2004) (citing *Koffman v. Garnett,* 265 Va. 12, 15, 574 S.E.2d 258, 260 (2003)); *Griffin,* 227 Va. at 321, 315 S.E.2d at 213; *Ferguson v. Ferguson,* 212 Va. 86, 92, 181 S.E.2d 648, 653 (Va. 1971)). Defendants incorporate their arguments set forth in Section III.A above arguing that Plaintiff's allegations against the Individual Defendants do not reach the

level of care necessary for a showing of gross negligence as a matter of law. Plaintiff responds that Defendants had knowledge of Zacofsky's stalking and harassment, and that each of them had first hand reason to know of his assaults, and rather than use their power has his superior officer to stop his behavior they "made light of it, did nothing to intervene, and ignored Ms. Mitchell's repeated pleas for help." (Opp. at 21 (citing ¶¶ 4-8, 17, 19-20, 22-25, 30-31, 40, 44-45, 47, 49-50, 52-54, 73).) Plaintiff argues, "the 'deliberate indifference' standard applied in Eighth Amendment cases [equates with] the 'subjective recklessness' standard of criminal law." *Brown v. Harris,* 240 F.3d 383, 389 (4th Cir. 2001.)(citing *Farmer,* 511 U.S. at 839-40.) As "gross negligence is negligence which shocks fair-minded people, but is less than willful recklessness," a plausible claim for supervisory liability would also plausibly plead gross negligence. *See Harris v. Harman*, 253 Va. 336 (Va. 1997) (citing *Griffin v. Shively,* 227 Va. 317, 321,(1984). Thus, the Court finds that Plaintiff has sufficiently stated a claim of gross negligence against all Defendants.

## IV.  Conclusion

For the foregoing reasons, the Court will deny
Defendant Dallos and Defendants Scott Baird, Corporal Barbozza,
Vincent Collier, Sharon Cronin, Gregory McRea, Challoughlicz
Randle, Victor Reid, Deborah Shepard, Claude Sivels, Suzanne
Weatherhead, Diane Wilson (the corrected name of individual
identified in *the* Amended Complaint as "Sgt. Willis/Wilson;" *see*
Dkt. 35), Dwight Wilson, and Brian Yezierski's Motions to
Dismiss.

An appropriate Order will issue.


|                        | /s/                                         |
|------------------------|---------------------------------------------|
| March 16, 2010         | James C. Cacheris                           |
| Alexandria, Virginia   | UNITED STATES DISTRICT COURT JUDGE          |